UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JASON LEE COLEY,

                              Plaintiff,      **No. 6:14-cv-06638(MAT)**
                                                        **DECISION AND ORDER**

          -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

---

## I. Introduction

Represented by counsel, Jason Lee Coley ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is affirmed.

## II. Procedural Status

Plaintiff protectively filed an application for SSI on November 2, 2010, alleging disability due to "mental problems." T.198-203.[1] After this application was denied, Plaintiff requested a hearing, which was held via videoconference by administrative law judge Andrew Henningfield ("the ALJ") on August 17, 2012.

---

[1] Numbers preceded by "T." refer to pages from the certified administrative transcript, submitted by Defendant as a separately bound exhibit to her answer.

Plaintiff, who was thirty-two years-old at the time of the hearing, appeared with his attorney and testified. T.37-79, 190. A vocational expert ("the VE") also testified. T.37-79, 69-78, 184-88. On January 15, 2013, the ALJ issued an unfavorable decision. T.16-30. The Appeals Council denied review on September 11, 2014, making the ALJ's decision the final decision of the Commissioner. T.1-6. This timely action followed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual recitations contained in the parties' briefs. The record evidence will be discussed in further detail as necessary to the resolution of the parties' motions.

**III. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any

fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**IV. The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims, see 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2010, the date of his application. At step two, the ALJ determined that Plaintiff has a "severe" impairment of "mental health disorders."

The ALJ considered Listing 12.08 (Personality Disorders) and Listing 12.04 (Affective Disorders) and determined that Plaintiff's mental health disorders do not meet or medically equal either of those Listings. In terms of activities of daily living, the ALJ found that Plaintiff has "no more than moderate" limitations; he does Sudoku puzzles, watches television, plays videogames with his stepson, reads magazines, handles all of his personal care needs, prepares simple meals and runs errands, and helps his spouse with

household chores. With regard to social functioning, Plaintiff has "no more than moderate" limitations. The ALJ noted that although Plaintiff testified he mostly stays at home, he attended a cook-out the day before the hearing, and had planned to attend a cook-out on the day of the hearing but could not do because it conflicted with the hearing. The consultative psychological examiner, Dr. Laura Cushman, observed that Plaintiff was well-groomed, made appropriate eye contact, and was cooperative during the examination. Plaintiff reported having friends who help him with housework and yardwork, and is able to go out in public without any issues. In regard to maintaining concentration, persistence, or pace, Plaintiff again was found to have "no more than moderate" limitations. Plaintiff testified that he loses his ability to focus when he loses interest in the task before him. However, the ALJ noted, Dr. Cushman observed him to be goal-directed in his thought process with intact concentration and attention, and no deficits in recent or remote memory. Plaintiff participated in the hearing appropriately, maintaining focus and following along with questions and answers. Finally, the ALJ found no episodes of decompensation of extended duration, such as psychiatric hospitalizations. Instead, the ALJ found, the evidence as a whole suggests Plaintiff is able to cope with some level of stress. For instance, Plaintiff reported an incident involving the police the night prior to the hearing, he did not display any negative compensation insofar as he was able to

attend the hearing, he arrived on time, and he was cooperative, responsive, and polite.

Finding that Plaintiff did not meet or medically equal a listed impairment, the ALJ proceeded to assess his residual functional capacity ("RFC"). The ALJ found that Plaintiff has the RFC to perform work at all exertional levels with the following non-exertional limitations: no climbing of ladders, ropes, or scaffolds; work must involve understanding, carrying out, and remembering no more than a few simple instructions; work must be routine and repetitive, involving only a few, if any, changes in the work setting; no high volume fast-paced production-rate work with strict quotas; work must not involve physical hazards; work must not involve interaction with the public and no more than occasional interaction with coworkers and supervisors; and work tasks must be well-defined, requiring no more than occasional simple decision-making or use of independent judgment.

At step four, the ALJ noted that Plaintiff had no past relevant work, was a younger individual as of the application date, had a limited education (he had obtained a general equivalency diploma), and was able to communicate in English. At the hearing, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC could perform the requirements of representative occupations in the national and regional economies such as laborer (stores) (medium, unskilled); vehicle

cleaner (medium, unskilled), and laundry worker (medium, unskilled). The VE also testified that these were "just three" examples of possible jobs, and that there "would be many others across the . . . different exertional levels." T.73. The ALJ relied on the VE's testimony to conclude that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, the ALJ entered a finding of "not disabled."

**V.   Discussion**

    **A.   Erroneous Weighing of the Medical Evidence (Plaintiff's Point I(1))**

As his first point, Plaintiff argues that evidence supporting a finding of disability is "overwhelming" and that the ALJ erred in weighing the medical evidence. See Pl's Mem. at 9-10.

Plaintiff's first challenge to the ALJ's decision is, in effect, a challenge to the substantiality of the evidence supporting it. While substantial evidence is "more than a mere scintilla[,]" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted), "it is still a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)). The Second Circuit has explained that it "means once an ALJ finds facts, [the reviewing court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." Brault,

683 F.3d at 448 (emphasis in original). In other words, if an ALJ's decision is supported by substantial evidence, it must be upheld, even where the record contains other substantial evidence that might support the claimant's position. Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

Here, the ALJ acknowledged that Plaintiff testified to being disabled due to mental disorders and mental limitations from a closed head injury ("CHI"). With regard to the CHI, the ALJ noted that on December 18, 2010, Plaintiff was hospitalized after being losing consciousness due to sustaining a punch in the face by a police officer. The results of imaging tests were negative, and his diagnosis two days later was CHI with a mild traumatic brain injury. Upon discharge, Plaintiff had a broken nose and a lip laceration, and he was eating a regular diet, ambulating independently, had no activity restrictions, and was controlling his pain with Motrin. The record does not reveal that Plaintiff received any further medical care in regards to his 2010 CHI. The ALJ's conclusion that this was not a "severe" or disabling impairment is amply supported by substantial evidence.

With regard to Plaintiff's mental health disorders, the ALJ observed that he has received only "sporadic conservative treatment," mostly during periods of incarceration, and that there were only two sets of treatment records from Unity Behavioral Health ("Unity"), from 2005, and 2011, which were "sparse." The ALJ

also characterized the findings on his mental status examinations as "mostly unremarkable," which is not an unreasonable view of the record. In 2005, the only diagnosis by the Unity health care provider was cannabis dependence. Plaintiff, who was living with a friend at the time, denied any previous mental health treatment or psychiatric hospitalizations, and he reported spending time with his mother and girlfriend. The clinician described Plaintiff as friendly, well-groomed, and cooperative, albeit with poor insight and judgment.

On March 17, 2011, Plaintiff returned to Unity after his family reportedly expressed concerns about his anger. T.298-313. He was seen by counselor Susan Eschrich ( "Ms. Eschrich"), who observed that Plaintiff's mood was depressed and sad, with a flattened and blunted affect. He had superficial insight and fair judgment but no apparent cognitive deficit. The following week, on March 24, 2011, Plaintiff's affect was normal, though his mood still was sad. Ms. Eschrich diagnosed Plaintiff with mood disorder, not otherwise specified ("NOS"), and anti-social personality disorder; at that time, he was not taking any medications.

Plaintiff apparently did not return to Unity for further treatment. Beginning on June 23, 2011, Plaintiff was incarcerated at Monroe County Jail ("MCJ"), where he underwent mental health screening. Although he reported a history of bipolar disorder to the health care provider at the MCJ, there are no treatment notes

in the administrative record to substantiate a diagnosis of bipolar disorder. Plaintiff's affect was flat, but his mood, speech, and motor activity were appropriate. On June 24, 2011, licensed clinical social worker Margaret O'Keefe ("LCSW O'Keefe") examined Plaintiff at the MCJ and noted that his mood and thought content were anxious, but his affect was appropriate, and his recent and remote memory were preserved. He denied suicidal thoughts, plan, or intent. T.371. He was diagnosed with depressive disorder, NOS, but not prescribed any medication. T.372.

On July 12, 2011, Plaintiff again reported a diagnosis of bipolar disorder to nurse practitioner Shahid Ali ("NP Ali") at the MCJ. T.445-56. He was pleasant and cooperative with a depressed mood and broad affect. Plaintiff was diagnosed with depressive disorder, on a "rule out" basis; nicotine dependence; and cannabis dependence. He was prescribed Remeron, an antidepressant. Because Plaintiff expressed some suicidal ideation, he was placed on 1:1 supervision. The next day, however, Plaintiff had an appropriate affect, euthymic mood, and good eye contact; he engaged easily and denied thoughts of harming himself or others. T.377. He was removed from 1:1 supervision on July 15, 2011. T.458.

On July 25, 2011, NP Ali evaluated Plaintiff who said he was not depressed and that his sleep had. He complained of situational anhedonia and tended to isolate, but his mood was only mildly depressed. Plaintiff appeared "future-oriented" and was attempting

to get a job as a visiting room trustee so that he would be able to spend more time visiting with his family. T.378.

Plaintiff argues that there is substantial evidence in the record of significant mental limitations attributable to his mental impairments and points to observations by mental health providers that Plaintiff had "extreme" difficulties controlling his anger and that he displayed anxious mood and thought content at times. However, as the Second Circuit has explained, "whether there is substantial evidence supporting the [claimant]'s view is not the question . . . ; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (citation omitted). Here, the present record contains substantial evidence supporting the ALJ's view of the limitations attributable to Plaintiff's mental health disorders. In addition, because the Court has not found legal error in the ALJ's analysis of Plaintiff's limitations stemming from his mental health disorders, this argument does not provide a basis for reversal.

### B. Erroneous Weighing of the Consultative Examiner's Opinion (Plaintiff's Point I(2))

Plaintiff argues erred in discussing the weight to be given to consultative psychologist Dr. Cushman's opinion, see T.284-88. Dr. Cushman examined Plaintiff on January 28, 2011, at the Commissioner's request. Plaintiff reported impaired sleep, low appetite, depression, irritability, severe angry outburst several

times per week, restlessness, hypervigilance, and excessive worry. His fiancée, who attended the examination with him, informed Dr. Cushman that his only emotion was anger. T.285. On examination, Dr. Cushman noted that Plaintiff displayed a restrict ed to flat affect, poor insight, and poor judgment. T.286. Dr. Cushman diagnosed Plaintiff with intermittent explosive disorder. T.287.

As the ALJ noted, Dr. Cushman was the only acceptable medical source who examined Plaintiff and issued an opinion, and therefore her opinion was entitled to some weight. He disagreed with Plaintiff's representative that her opinion should be given considerable weight, however, and instead assigned it "moderate weight." T.25. According to the ALJ, Dr. Cushman did not have the benefit of considering the other evidence which "include[d] largely unremarkable exams by other providers, his observed demeanor by others, a limited treatment history, and inconsistent statements on a variety of topics." These reasons for not assigning "considerable weight" to the restrictive portions of Dr. Cushman's opinion are supported by the factual record and are appropriate considerations to be used in weight medical expert opinions. See 20 C.F.R. § 416.927(c)(1)-(6); see also Woodmancy v. Colvin, 577 F. App'x 72, 74 (2d Cir. 2014) (summary order) ("[T]he ALJ acted within her discretion in according the [treating physician] opinions little weight because record evidence of unremarkable clinical findings contradicted or failed to support the limitations conclusions in

these opinions.") (citing Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (stating that treating physician's opinion is not controlling when contradicted by "other substantial evidence in the record")). The ALJ also characterized Dr. Cushman's opinion itself as "vague and subject to some interpretation," noting that her "use of words such as 'appears,' 'usually,' 'possibly,' and 'likely' weaken the statements[,] adding to their vagueness." T.24; see T.287 (Dr. Cushman noted that "[t]he majority of his symptoms appear caused by his psychiatric symptoms, chiefly frequent angry outbursts" and it is "likely that he would have difficulty maintaining a regular schedule and possibly learning new tasks"). Plaintiff argues that "it has been held that use of the words 'likely' and 'appear' do not show equivocation on the part of the author in the context of a Social Security case." Pl's Mem. at 12 (citing Graham v. Astrue, 733 F. Supp.2d 724, 727-28 (E.D.N.C. 2010); emphasis omitted). In Graham, the district court for the Eastern District of North Carolina found error where the ALJ "cited the use of words such as 'probably,' 'likely,' and 'appeared,' *as the basis* for his decision to accord these opinions [from two consultative physicians] only 'little weight.'" Id. at 727-28 (emphasis supplied). Here, in contrast, the ALJ provided other reasons, discussed above, that are supported by the administrative record and are appropriate factors to consider under the Commissioner's regulations. Unlike the ALJ in Graham, the ALJ here

did not rely on the use of equivocal words such as "likely" and "appeared" as his sole basis for assigning less than considerable weight to Dr. Cushman's opinion. Furthermore, the ALJ here did not assign only "little" weight to Dr. Cushman's opinion, instead according it "moderate" weight. Thus, the Court finds Graham distinguishable and, in any event, it is an out-of-Circuit district court decision and not binding on this Court.

Plaintiff further argues that the ALJ improperly discounted Dr. Cushman's opinion insofar as the ALJ noted that her use of words such as "appears" and "possibly" "suggest[ed] that [she] relied heavily on [Plaintiff]'s subjective claims in assessing the extent of his problems." T.24. Plaintiff asserts that this was error because, especially when dealing with mental health disorders, it is appropriate to consider a patient's report of complaints, or history. Pl's Mem. at 13 (quoting Showers v. Colvin, No. 3:13-cv-1147(GLS/ESH), 2015 1383819, at *8 fn. 18 (N.D.N.Y. Mar. 25, 2015) ("It is axiomatic that a treating psychiatrist must consider a patient's subjective complaints in order to diagnose a mental disorder. In fact, whether dealing with mental health or not, consideration of a 'patient's report of complaints, or history, [a]s an essential diagnostic tool,' is a medically acceptable clinical and laboratory diagnostic technique.") (internal quotation marks and citations omitted)). This case is inapposite because it dealt with an ALJ's error in discounting the

claimant's treating physician's *diagnoses* per se of additional mental impairments; it did not address the type of error alleged here, i.e., an ALJ's characterization of the severity of the limitations *caused by* those diagnoses. See id. ("ALJ Ramos further discounted Dr. Long's and Dr. Moore's diagnoses because each recorded that Showers's mood was euthymic, and he could complete serial threes and similar mental exercises. This evidence has more relevance to *severity* of an impairment than to its *existence*.") (emphases in original).

Plaintiff also argues that the opinion of state agency review psychologist Dr. Thomas Harding was incomplete and usurped the function of the VE. Dr. Harding found that Plaintiff had "moderate" limitations in his ability to maintain a regular schedule, accept instructions, respond appropriately to criticism from supervisors, and get along with co-workers without exhibiting behavioral extremes, but Plaintiff asserts it is "unclear what functional limitations would result from Plaintiff's moderate limitations in these areas[,]" such as "how much work would Plaintiff miss given his moderate limitations in maintaining a regular schedule[.]" Pl's Mem. at 13 (citing T.266). The Commissioner notes that Plaintiff is relying on Section I, a portion of the Mental RFC Assessment Form that is "'*merely a worksheet* to aid in deciding the presence and degree of functional limitations. . . and *does not constitute the RFC assessment*.'" Def's Mem. at 11 (quoting POMS DI

24510.060(B)(2); emphases in original). The "'*actual mental RFC assessment is recorded*' in Section III, and therefore the findings in Section 1 were incorporated into Dr. Harding's conclusion that Plaintiff could perform simple, repetitive work in a low stress environment." Def's Mem. at 11 (quoting POMS DI 24510.060(B)(2); citing T.267; emphasis in original). As the Commissioner argues, it was not erroneous for the ALJ to rely on this conclusion by Dr. Harding. See, e.g., Burnett v. Colvin, 564 F. App'x 605, 608 (2d Cir. 2014) (summary order) (opinion of non-examining medical consultant that claimant "retains the ability to perform simple work on a sustained basis" comprised part of the "substantial evidence" supporting the ALJ's finding that claimant could perform limited light work). Dr. Harding was not making a vocational assumption but instead was giving his opinion on Plaintiff's abilities and limitations in the domains of understanding, remembering, complying with workplace norms of behavior, etc., which he is qualified to do. See McEaney v. Comm'r of Social Sec., 536 F. Supp.2d 252, 256 (N.D.N.Y. 2008) ("[T]he evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence. An ALJ must treat such evaluations as expert opinion evidence of non-examining sources. This treatment extends to consultants' RFC assessments. State agency consultants are experts in evaluating the medical issues of disability claims.") (internal citations omitted; citing Social

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2, *4 (S.S.A. 1996)).

### C. Failure To Account For Plaintiff's Limitations In Dealing With Stress (Plaintiff's Point II)

Plaintiff contends that the ALJ did not make specific findings regarding the nature of his stress, the circumstances that trigger it, and how these factors affect his present ability to work. Pl's Mem. at 15 (citing Abbott v. Colvin, 596 F. App'x 21, 23 (2d Cir. 2015) (summary order); The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985) ("[T]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances . . . [t]hus mentally ill may have difficulty meeting the requirements of so-called 'low-stress' jobs . . . [a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment."); other citations omitted).

It is true that remand is appropriate where the reviewing court "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'" Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (quotation omitted). Here, however, the Court is not confronted with such a circumstance. The ALJ's comprehensively

discussed the medical evidence in the record, and, contrary to Plaintiff's contention, did not mischaracterize that evidence. As noted above, the most restrictive opinion came from consultative psychologist Dr. Cushman, who observed that Plaintiff "appeared" to have significant limitations due to his emotional symptoms in performing tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. The ALJ's RFC assessment limits Plaintiff to a routine and repetitive job with few, if any, changes in the work setting; precludes him from high volume fast-paced production-rate work with strict quotas or work tasks that are not well-defined; and demands from him no more than occasional simple decision-making or use of independent judgment. Dr. Cushman also noted stated that Plaintiff's difficulties "appeared" to be caused "chiefly" by "frequent angry outbursts." T.287. The ALJ, in order "[t]o fully account for [Plaintiff's] social interaction difficulties and anger issues," T.25, determined that he "should not deal with members of the public and that his interaction with coworkers and supervisors should be no more than occasional." Id. Accordingly, the RFC assessment states that Plaintiff should have no interaction with the public and no more than occasional interaction with coworkers and supervisors. The ALJ's RFC assessment ostensibly does not conflict with Dr. Cushman's statements, which, as the ALJ noted, were modified by qualifiers such as "appear" and "likely." See,

e.g., Patterson v. Astrue, 2013 WL 638617, at *10 (N.D.N.Y. Jan. 24, 2013) ("[T]he ALJ's RFC assessment limits plaintiff's abilities to 'simple, routine, repetitive type tasks involving occasional contact with others,' a finding that is not in conflict with Dr. Barry's determination that plaintiff has a history of obsessive-compulsive traits, anxiety, difficulty handling stress, and is easily frustrated. . . . [T]here is nothing in the record to suggest that the anxiety and difficulty handling stress that Dr. Barry discerned would preclude plaintiff from undertaking simple, routine, repetitive tasks.").

Furthermore, the cases on which Plaintiff relies do not support the result he urges. For instance, in Abbott, the Second Circuit found that "the ALJ's analysis on [her ability to perform past relevant work] offers only passing mention of Abbott's identified nonexertional limitations," and therefore it could not "determine whether the ALJ conducted the requisite 'careful appraisal' of how Abbott's nonexertional limitations would or would not affect her ability to function as a teacher." 596 F. App'x at 23. In Welch v. Chater, 923 F. Supp. 17 (W.D.N.Y. 1996), the district court remanded for development of the record concerning the claimant's past relevant work and to make findings comparing the mental demands of that work with the claimant's current capabilities. 923 F. Supp.2d at 21. In contrast to Abbott and Chater, the ALJ discussed at length the record evidence regarding

Plaintiff's allegations of mental impairments, and resultant limitations on handling stress throughout the decision and made several specific findings regarding Plaintiff's coping abilities, such as the finding in the context of step three that there was "no evidence showing that even a minimal increase in mental demands or changes in the environment would cause him to decompensate." T.22.[2] The Court notes that at various points during the relevant time period, Plaintiff was incarcerated and thus clearly experienced extreme changes in his environment. Although he did receive some mental health services while in jail, he did not decompensate. The ALJ nevertheless incorporated the need for a low-stress environment and the requirement of limited interaction with people in his questions to the VE at the hearing regarding the types of representative positions a person with such limitations could perform. See T.71-72. The VE provided several representative occupations at a medium exertional level that addressed these stress-related and interpersonal limitations, and noted that there were many more options available at different exertional levels. In short, the Court cannot find that the ALJ committed legal error in regards to his assessment of Plaintiff's vocational limitations due to his difficulties in handling stress and interacting with others.

---

[2] The ALJ also observed that Plaintiff "struggled to respond" when asked why he is unable to work, and eventually said he "might be able to work if the job can keep his interest up." T.25.

**VI. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was not erroneous as a matter of law and was supported by substantial evidence. Accordingly, the Commissioner's determination is affirmed. Defendant's Motion for Judgment on the Pleadings is granted, and Plaintiff's Motion for Judgment on the Pleadings is denied. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

                                                          **S/Michael A. Telesca**

                                                          HON. MICHAEL A. TELESCA
                                                     United States District Judge

Dated:   October 29, 2015
        Rochester, New York.